IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARY RUTH PRICE,                     :      No. 3:24cv1575
           Plaintiff              :
                             :      (Judge Munley)
      v.                              :
                             :
PROMEDICA EMPLOYMENT            :
SERVICES, II, LLC; and          :
CURO HEALTH SERVICES d/b/a      :
GENTIVA SERVICES, INC.,         :
           Defendant              :

## MEMORANDUM

Plaintiff Mary Ruth Price asserts claims against Defendants ProMedica Employment Services, II, LLC ("ProMedica") and Curo Health Services, LLC d/b/a Gentiva Services, Inc. ("Gentiva") pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et seq.* ("ADA") and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"). Before the court is a motion to dismiss filed by Defendant Gentiva pursuant to Federal Rule of Civil Procedure 12(b)(6). Gentiva's motion is ripe for disposition.

## Background

According to the complaint, Defendant ProMedica hired Price in 2015 to serve as a corporate regional hospice consultant.[1] (Doc. 1, Compl. ¶ 12). Price

---

[1] These brief background facts are derived from plaintiff's complaint and the exhibits attached thereto. At this stage of the proceedings, the court must accept all factual allegations in the

worked in ProMedica's home health, palliative, and hospice business, which was known as Heartland Hospice and Home Care ("Heartland"). Id. ¶¶ 12, 13.  Price's usual duties included travel to twelve (12) hospice locations in Pennsylvania and Maryland. (Doc. 1, Compl. ¶ 15).

In February 2023, ProMedica and Defendant Gentiva announced that they signed a definitive agreement under which Gentiva would acquire Heartland, the portion of ProMedica's business applicable to plaintiff's employment. Id. ¶ 47.  As this acquisition process proceeded, Price experienced health issues. Specifically, on May 31, 2023, Price required hospitalization for infections and respiratory failure. Id. ¶ 18.  Due to the hospitalization, Price requested and received leave from work pursuant to the FMLA. See id. ¶ 20.

Price remained on leave for several months.  Price's providers diagnosed her with Common Variable Immunodeficiency Disease ("CVID").[2] Id. ¶¶ 21, 23, 24.  On August 8, 2023, Price's treating immunologist advised her that "four-six weekly" intravenous immunoglobin ("IVIG") treatments were necessary prior to the plaintiff's return to work. Id. ¶ 25.  According to the timeline presented in the

---

amended complaint as true.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

[2] Price alleges that CVID is an immune disorder that causes frequent bacterial and viral infections of a person's airways. (Doc. 1 ¶¶ 22–23).

complaint, plaintiff's FMLA-protected leave expired on or around August 22, 2023. Id. ¶ 32.

Prior to that date, on August 11, 2023, Price notified her supervisor, Gina Klein, a registered nurse, about her CVID diagnosis and IVIG treatment plan. Id. ¶ 26. One week later, on August 18, 2023, Klein told Price that she was making plaintiff's position a hybrid position. Id. During that conversation, Klein also advised that Price would now be responsible for covering two hospice locations in Carlisle and Chambersburg, Pennsylvania and would work remotely performing audits. Id. ¶ 27. The supervisor also told Price that a regional director of operations was informed of this plan and "was okay with it." Id. ¶ 28.

Nevertheless, two weeks after that conversation, on September 1, 2023, Klein informed Price that ProMedica posted plaintiff's position because her FMLA return date had passed. Id. ¶ 29. Price relayed that she intended to return to work as soon as she completed IVIG treatments. Id. ¶ 30. Price also asked if anyone had been hired for her position. Id. ¶ 31. According to the plaintiff, the supervisor then stated in this conversation: "our goal is for you to return to your position but there cannot be any restrictions to your return." Id. ¶ 31. Price later received a letter from ProMedica's human resources ("HR") department indicating that plaintiff's position would be filled because her FMLA leave expired as of August 22, 2023. Id. ¶ 32.

3

On September 19, 2023, Price spoke with Klein again, asking if her position had been filled. Id. ¶ 35.  Price's supervisor responded by again stating that plaintiff's position had not been filled and that her return to work must be without any restrictions. Id. ¶¶ 35, 37.  During this conversation, Price also informed the supervisor that her physician would be releasing her to return to work as of October 9, 2023. Id. ¶ 36.  Price's doctor's office then faxed plaintiff's return-to-work documents to ProMedica on September 21, 2023. Id. ¶ 39.

On October 5, 2023, Price sent Klein an email regarding arrangements for her return to work. Id. ¶ 40.  Plaintiff alleges that she had received no communications from HR prior to that point about a return to work or any policy to follow otherwise. Id.  The next day, on October 6, 2023, the supervisor called Price to tell her that her previous position had been filled and that she no longer had a job. Id. ¶ 41.  The supervisor told Price: "Your FMLA date was up August 21, 2023, and ProMedica did not have to hold the position." Id. ¶ 42.

Price then made numerous requests for a phone call from the HR department. Id. ¶ 43.  On October 12, 2023, plaintiff received a phone call from Tiffany Gall, identified as the Director of Corporate Human Resources and Workforce Utilization (hereinafter "HR director"). Id. ¶ 43.  During that call, Gall told Price that ProMedica did not receive the return-to-work documents. Id. ¶ 44. Gall also told Price that she could apply to two positions in Brunswick, Georgia or

Jacksonville, Florida. Id. ¶ 45.  However, those positions were removed from

ProMedica's career website two days later. Id. ¶ 46.

As indicated above, Gentiva had earlier announced its acquisition of

ProMedica's home health, palliative, and hospice care business.  Id. ¶¶ 47, 49.

On October 17, 2023, five (5) days after speaking with the HR director, Price

received an email from the executive vice president of Gentiva offering plaintiff

employment upon closing of ProMedica's asset sale to Gentiva. Id. ¶ 48.  This

email provided, in part:

> You have until October 22, 2023 to consider your
> Employment Offer. To accept the Employment Offer,
> there's nothing you need to do. By accepting, you'll be
> subject to Gentiva's policies for its employees.
>
> To decline this Employment Offer, then please send an
> email, before October 22, 2023...to let us know. Of course,
> if you don't perform your position's duties following the
> Closing, you will be deemed to have declined your
> Employment Offer. Either way, your employment with
> ProMedica will be deemed to have terminated on the date
> of the Closing and you will not be treated as a Gentiva
> employee.
>
> We are confident that your knowledge, skills, and
> dedication are well suited for our needs and that you will
> make significant contributions and caring for our patients
> and families.  We are looking forward to you joining us and
> making a difference in the lives of those who need us most.
>
> Welcome to Gentiva!

(Doc. 1-1, Compl. Ex. A).

5

On November 1, 2023, Gentiva announced through a press release that it had completed the acquisition of the home heath, palliative, and hospice assets from ProMedica. (Doc. 1-2, Compl. Ex. B). The ProMedica employees mentioned above became Gentiva employees, including Klein, the supervisor, and Gall, the HR director. (Doc. 1, Compl. ¶¶ 50–52). Price, however, was not permitted to return to work either by ProMedica or Gentiva. Id. ¶ 53.

Based on the above allegations, Price asserts four (4) claims against the defendants: Count I – disability discrimination in violation of the ADA; Count II – retaliation in violation of the ADA; Count III – failure to accommodate in violation of the ADA; and Count IV – violation of the FMLA. Id. ¶¶ 66–100. Price alleges that defendants unreasonably refused to grant an ADA reasonable accommodation beyond the 12-week period protected by the FMLA in the form of a limited amount of extended leave and/or the ability to work remotely for a short period. Id. ¶ 59. By terminating her and/or failing to hire her, Price contends that defendants retaliated against her due to her disability and because she exercised FMLA rights. Id. ¶ 60.

As for her claims against Gentiva, Price asserts that Gentiva is the successor to ProMedica's home health, palliative, and hospice care business and is thus also responsible for ProMedica's actions. Id. ¶¶ 55–56, 77, 83, 91, 99. In response to being named as a defendant in this action, Gentiva filed a motion to

6

dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 15). Gentiva challenges allegations seeking to hold it liable for the alleged ADA and FMLA violations under a successor liability theory.

## Jurisdiction

Because Price asserts claims pursuant to the ADA and FMLA, the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## Standard of Review

Gentiva has filed a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)). This means that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. Oldham v. Pennsylvania State Univ., 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted). The second step involves reviewing the operative pleading and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. See Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted).

The third step evaluates the plausibility of the remaining allegations. Id. In evaluating plausibility of the plaintiff's allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. Id. (citations omitted).

**Analysis**

Gentiva seeks dismissal of Price's ADA and FMLA claims, which are premised on allegations that Gentiva is responsible for ProMedica's employment decisions as its successor. For ease of disposition, the court will first address

8

Gentiva's arguments against successor liability as applied to Price's FMLA retaliation claim.

### 1. Successor Liability Under the FMLA

In enacting the FMLA, Congress determined that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods[.]" 29 U.S.C. § 2601. Under the FMLA, an eligible employee is "entitled to a total of 12 workweeks of leave during any 12-month period" for qualifying reasons. See 29 U.S.C. §§ 2612(a)(1)(A)–(F). When an employee returns from FMLA leave, "the employer must restore the employee to the same or equivalent position held by the employee when the leave commenced, as well as restore the employee with equivalent benefits and conditions of employment." Capps v. Mondelez Glob., LLC, 847 F.3d 144, 151 (3d Cir. 2017) (citing Ross v. Gilhuly, 755 F.3d 185, 191 (3d Cir. 2014); 29 U.S.C. § 2614(a)).

Under the statute, employers may not "interfere with, restrain, or deny the exercise of or attempt to exercise" FMLA rights. 29 U.S.C. § 2615(a)(1). Likewise, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2).

Price's complaint advances an FMLA retaliation claim. (Doc. 1, Compl. ¶ 97). Because the text of the FMLA "does not specifically provide for a retaliation claim," such claims are rooted in regulations promulgated by the United States Department of Labor ("DOL"). See Egan v. Delaware River Port Auth., 851 F.3d 263, 269 (3d Cir. 2017) (citation omitted); see also Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 256 (3d Cir. 2014) (citing Erdman v. Nationwide Insurance Co., 582 F.3d 500, 508 (3d Cir. 2009)). Specifically, these regulations prohibit employers "from discriminating or retaliating against an employee...for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c).

To succeed on an FMLA retaliation claim, a plaintiff must establish that: 1) she invoked her right to FMLA-qualifying leave, i.e., engaged in protected activity; 2) she suffered an adverse employment decision; and 3) the adverse action was causally related to her invocation of rights. See Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 346 (3d Cir. 2022); Budhun, 765 F.3d at 256 (citing Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012); Ross, 755 F.3d at 192–93). To demonstrate a causal connection, a plaintiff must generally show: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism following the protected conduct coupled with timing. See Budhun, 765 F.3d at 258 (3d Cir. 2014) (citing Lauren W. ex rel. Jean W. v. DeFlaminis,

10

480 F.3d 259, 267 (3d Cir. 2007)). Based on the language of 29 C.F.R. §
825.220(c), plaintiffs must show "only that the use of FMLA leave was a 'negative
factor' in the adverse employment decision." DiFiore v. CSL Behring, LLC, 879
F.3d 71, 78 (3d Cir. 2018) (discussing Egan, 851 F.3d at 266–67, 273).[3]

As for the elements of her FMLA retaliation claim, Price advances that she
invoked her right of FMLA leave following the announcement that Gentiva was
acquiring the home health, palliative, and hospice care side of ProMedica's
business. (Doc. 1, Compl. ¶¶ 20, 47). Regarding the adverse employment
action and causation elements, Price further alleges that, prior to her termination,
there were various back-and-forth communications between the plaintiff and her
supervisor about job duties, in-person requirements, and restrictions on her
return to work beginning while plaintiff was within the FMLA-protected period. Id.
¶¶ 26–32, 35–46, 48, 53. Subsequently, Price's employer posted her position,
but plaintiff's supervisor continued to engage in a dialogue with plaintiff about her
return to work. Id. ¶¶ 29–31, 35–37. Price provided her employer with a return
date and supplied paperwork completed by her doctor. Id. ¶¶ 37–39. Yet after
doing so, Price did not hear back from her employer. Id. ¶ 40. Instead, the

---

[3] In a non-precedential opinion, the Third Circuit Court of Appeals has indicated that this
"motivating factor" causation standard is open to question based upon the United States
Supreme Court's decision in Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024).
Coleman v. Children's Hosp. of Philadelphia, No. 23-3064, 2024 WL 4490602, at *3, n. 4 (3d
Cir. Oct. 15, 2024).

employer decided to fill Price's prior position and communicate to plaintiff, through her supervisor, that she no longer had a job. Id. ¶¶ 41–42.

Subsequently, however, the employer's HR director advised Price that she could apply for two out-of-town positions. Id. ¶ 45. Then, ostensibly as part of the acquisition process, Gentiva emailed Price with an employment offer that required no action to accept. (Doc. 1-1, Compl. Ex. A). Despite this email, ProMedica and Gentiva did not provide plaintiff with her prior position or any position. (Doc. 1, Compl. ¶¶ 41–43, 53).

As presented in the complaint, these communications are inconsistent and provided the plaintiff with mixed messages as to whether she actually had a job upon return from medical leave, which appears to have started under the FMLA and was then extended under the ADA. Such allegations are thus sufficient to show a pattern of antagonism coupled with timing to support the causation element, i.e., that the plaintiff was terminated because she used FMLA leave. Thus, Price's complaint plausibly states a *prima facie* FMLA retaliation claim.

Gentiva uses the above timeline to assert that ProMedica definitively terminated Price before Gentiva's acquisition of ProMedica. Thus, per Gentiva, the plaintiff, "a non-employee, cannot state a claim under FMLA that is available only to eligible employees." (Doc. 16 at 13–14).

To qualify as an "eligible employee" under the FMLA, an individual must satisfy three criteria. First, the employee must have been employed by the employer for at least 12 months. 29 U.S.C. §§ 2611(2)(A)(i). Second, the employee must have completed at least 1,250 hours of service with the employer during the previous 12-month period immediately preceding the commencement of leave. 29 U.S.C. §§ 2611(2)(A)(ii). Third, the employee must be employed by the employer at a worksite where 50 or more employees are employed within 75 miles. See 29 U.S.C. § 2611(2)(B)(ii). Each component of the term "eligible employee" refers to an "employer," which is itself separately defined.

Pursuant to the FMLA, "[t]he term 'employer' … means any person[4] engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year[.]" 29 U.S.C. § 2611(4)(A)(i). The term "employer" also includes "any successor in interest of an employer[.]" 29 U.S.C. § 2611(4)(A)(i)(II). The term "successor in interest" is not expressly defined by the FMLA statute.

---

[4] "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a) (as referenced by 29 U.S.C. § 2611(8)).

13

Courts normally interpret a statute "in accord with the ordinary public meaning of its terms at the time of its enactment." Bostock v. Clayton Cnty., Georgia, 590 U.S. 644, 654 (2020).  Moreover, every statute has a single best meaning, which is fixed at the time of enactment. See Loper Bright, 603 U.S. at 400 (quoting Wisconsin Central Ltd. v. United States, 585 U.S. 274 (2018)).

Congress enacted the FMLA in 1993.  By that time, "the 'successor in interest' inquiry [had] arisen in many contexts" and had a "long history" in labor law disputes.  Sullivan v. Dollar Tree Stores, Inc., 623 F.3d 770, 781 (9th Cir. 2010).  Specifically, federal labor-law cases had "appl[ied] an equitable, policy driven approach to successor liability [with] very little connection to the concept of successor liability in corporate law." Cobb v. Cont. Transp., Inc., 452 F.3d 543, 551 (6th Cir. 2006) (citing Golden State Bottling Co. v. NLRB, 414 U.S. 168, 184–85 (1973); NLRB v. Burns Int'l Security Servs., Inc., 406 U.S. 272, 279–87, (1972); John Wiley & Sons v. Livingston, 376 U.S. 543, 549 (1964)).  The inclusion of "successor in interest" under the definition of "employer" in the FMLA thus reflects a congressional intent to adopt the doctrine of successor liability developed in federal labor law cases. See id. at 550–51.

Moreover, since the enactment of the FMLA, the Third Circuit Court of Appeals has applied the federal common law successorship doctrine in the employment discrimination, wage-and-hour, and employee benefit plan contexts.

14

See Brzozowski v. Corr. Physician Servs., Inc., 360 F.3d 173, 178 (3d Cir. 2004) (Title VII of the Civil Rights Act); Rego v. ARC Water Treatment Co. of Pennsylvania, 181 F.3d 396 at 401–02 (same); Thompson v. Real Est. Mortg. Network, 748 F.3d 142, 152 (3d Cir. 2014) (Fair Labor Standards Act); Einhorn v. M.L. Ruberton Const. Co., 632 F.3d 89, 94 (3d Cir. 2011) (Employee Retirement Income Security Act).   This doctrine has also been applied when a party "has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations[.]" Golden State, 414 U.S. at 184; see also Rego, 181 F.3d at 401.  Consequently, the court will apply the federal common law standard to Price's FMLA retaliation claim against Gentiva based on the acquisition alleged, the inclusion of "successor in interest" in the definition of an "employer" at the time the FMLA was enacted, and as a logical extension of the above case law. [5]

---

[5] Both parties' arguments rely upon the federal successor liability standard in recognition of this body of law. (Doc. 16, Def. Br. in Supp. at 17–20; Doc. 18, Pl. Br. in Opp. at 12–13). In her brief in opposition, plaintiff also argues that a multi-factor test promulgated in the DOL regulations should be considered when evaluating whether an employer is a "successor in interest" under the FMLA. (See Doc. 18, at 15–16 (citing 29 C.F.R. § 825.107(a)–(b)). This specific argument, however, has recently been rejected by the Honorable Harvey Bartle III in the Eastern District of Pennsylvania. Easterling v. Cnty. of Delaware, No. CV 23-5016, 2025 WL 489859, at *3 (E.D. Pa. Feb. 13, 2025), reconsideration denied, No. CV 23-5016, 2025 WL 623651 (E.D. Pa. Feb. 25, 2025). In Easterling, Judge Bartle determined that the meaning of "successor in interest" was clearly a matter of legal interpretation for the court alone to decide and that reference to DOL regulations was no longer appropriate in determining the meaning of this statutory term. 2025 WL 489859, at *2 (discussing Loper Bright). The court will not rely upon 29 C.F.R. § 825.107 in this analysis.

Under the law, successor liability relies upon three principal factors: (1) continuity in operations and work force of the successor and predecessor employers; (2) notice to the successor-employer of its predecessor's legal obligation; and (3) ability of the predecessor to provide adequate relief directly. Brzozowski, 360 F.3d at 178 (quoting Rego, 181 F.3d at 401). The court's assessment of such claims may consider the procedural posture of this litigation and the absence of discovery into defendants' payroll documents, disciplinary records, internal corporate communications, or ownership and leadership structures. See Thompson, 748 F.3d at 149.

As for continuity in operations and work force, Price has alleged that 4000 individuals became employees of Gentiva upon the acquisition of ProMedica's home health, palliative, and hospice care business, including the supervisor and HR directors overseeing her return to work. (Doc. 1, Compl. ¶¶ 49–52, 54; Doc. 1-2, Compl. Ex. B, Press Release). Additionally, it may be reasonably inferred that Gentiva took over operations at the hospice facilities where Price had worked prior to taking leave. (Doc. 1, Compl. ¶ 15).

Regarding notice, Price alleges that Gall, the HR director, was aware that Price had taken FMLA leave and was in the process of being cleared to return-to-work. Gall advised Price that she could apply for other positions. Id. Shortly thereafter, Gentiva sent Price an email about an employment offer. Id. ¶¶ 41–48.

This email from Gentiva may be evidence of an error, as the moving defendant argues. (Doc. 16 at 16). In context, this email may also be the product of Gentiva having notice of Price's potential ADA and/or FMLA claims, particularly as it is alleged that Gall became a Gentiva employee in the acquisition. Based on this email, it is possible that a subsequent decision was made regarding Price's employment status. At this stage and absent discovery into ProMedica and Gentiva's internal communications about Price or her potential legal claims, the court must apply the inference that favors the plaintiff.

Finally, as to ProMedica's ability to provide Price with relief, plaintiff has only alleged that Gentiva acquired ProMedica's home health and hospice business. This is not an allegation asserting that ProMedica is insolvent or would have difficulties paying a judgment. After careful consideration, however, it cannot be expected that Price would possess detailed facts about the financial health of ProMedica at this stage just as she would not have information relative to a full consideration of the other successor liability factors.

After all, prior to "imposing a duty on a successor employer, a court must consider the particular facts of each case." Shaffer v. Mitchell Transp., Inc., 635 F.2d 261, 266 (3d Cir. 1980). That process is impossible on a motion to dismiss. At this stage, the court only has Price's version of the facts without the benefit of details that would be obtained in discovery. Based on the allegations, Price has

raised an expectation that discovery will reveal evidence of a FMLA retaliation claim against Gentiva under a theory of successor liability. Gentiva's motion to dismiss Price's FMLA retaliation claim will thus be denied.

## 2. Successor Liability Under the ADA

In contrast to the FMLA, the ADA does not contain "successor in interest" provisions within the statutory definition of "employer." See 42 U.S.C. § 12111(5). Nonetheless, as noted above, the Third Circuit has authorized successor liability claims in employment discrimination cases. See Rego, 181 F.3d at 401; Brzozowski, 360 F.3d at 178.  Having detailed whether Gentiva may qualify as a "successor in interest" for the purposes of Price's FMLA retaliation claim, the analysis of plaintiff's ADA claims against Gentiva would cover the same ground. Consequently, Gentiva's motion to dismiss Price's ADA claims will also be denied.

## Conclusion

For the reasons set forth above, Gentiva's motion to dismiss will be denied. An appropriate order follows.

Date: _8/26/25_

JUDGE JULIA K. MUNLEY
United States District Court